The undersigned have reviewed the award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties in an executed Pre-Trial Agreement, as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff employee at all relevant times herein.
3. CNA Insurance Companies was providing workers' compensation insurance coverage at the time of the accident herein.
4. Plaintiff's average weekly wage will be determined pursuant to the Form 22 submitted by defendant-employer.
5. Mid-South Management Company, d/b/a Jefferson Times, Inc., is the defendant-employer in this matter.
6. Plaintiff sustained an injury by accident while in the course and scope of her employment with defendant-employer on June 21, 1993.
7. The issues to be determined are as follows:
 (a) Whether plaintiff is entitled to any workers' compensation benefits beyond June 22, 1993, or whether her present condition is the result of an idiopathic condition not related to her admitted injury?
 (b) If so, what benefits, if any, is plaintiff entitled to receive?
***********
 EVIDENTIARY RULING
The Pre-Trial Agreement, along with its attachments and the stipulations, is hereby incorporated by reference as though fully set out herein.
***********
Based upon all of the competent, credible, and convincing evidence adduced at the initial hearing and from the record, the undersigned make the following additional
 FINDINGS OF FACT
1. At the time of initial hearing, plaintiff was forty-three years old. She had completed Wilkes Community College with a degree in File Clerk Management and Typing.
2. Plaintiff was employed by the defendant-employer in February, 1990, as an inserter. In 1992, plaintiff was promoted to the position of Circulation Manager.
3. On June 21, 1993, plaintiff was unloading boxes of inserts from a truck. She had taken a number of boxes off the truck and had placed them onto a cart. As she began to push the cart into the building, it became stuck. Plaintiff pushed hard on the cart to get it moving again. While doing so, she felt a pull in her lower back. She reported the incident to her supervisor and was sent to see a doctor.
4. Plaintiff was initially seen and treated by Dr. Philip Yount on June 21, 1993. Dr. Yount noted that plaintiff had a normal neurologic exam and diagnosed her condition as a lumbosacral strain with spasm. Dr. Yount told plaintiff to take the next two days off for her back. Plaintiff did not take the days off but instead continued to work.
5. Plaintiff continued to have pain in her lower back, and Dr. Yount took her out of work for two weeks. Plaintiff, thereafter, resigned from her position with defendant-employer on or about July 9, 1993.
6. Plaintiff was paid her regular salary for the period of time that she was taken out of work by Dr. Yount, that being two weeks and two days.
7. Plaintiff has not returned to work since her resignation of July 9, 1993, for defendant or for any other employer, although defendant-employer has offered plaintiff several different suitable positions.
8. Dr. Yount continued to treat plaintiff's condition but could not understand why plaintiff was getting worse instead of better. He felt that, normally, a person with the minor injury that plaintiff had sustained would have recovered by September, 1993. Plaintiff's condition continued to worsen, although he had treated her with medication and therapy. Dr. Yount sent plaintiff to see Dr. Michael Nicks of Hickory Orthopedic Center.
9. Dr. Nicks initially saw plaintiff on September 17, 1993. Dr. Nicks diagnosed plaintiff's condition as lumbar strain and recommended that she continue with the rehabilitation program recommended by Dr. Yount.
10. Plaintiff was seen by Dr. Andrea Stutesman of Rehabilitation Specialists on January 21, 1994, following a functional capacity evaluation (FCE). The FCE showed that plaintiff could carry up to twenty-seven pounds on an occasional basis. Dr. Stutesman recommended that plaintiff could perform a seated job which had some walking. Dr. Nicks also imposed the restrictions on lifting, bending and twisting. Defendant-employer offered plaintiff a suitable position that would have complied with the restrictions that had been given by her treating physicians.
11. Plaintiff's condition still continued to worsen although she was out of work, and Dr. Yount still could not determine why. Dr. Yount sent plaintiff to be seen and evaluated by Dr. Douglas Jeffery of the Department of Neurology at Bowman Gray School of Medicine on December 23, 1994.
12. Dr. Jeffery diagnosed plaintiff with having multiple sclerosis, and he began to treat her for her condition. Dr. Jeffery also noted that plaintiff was also suffering from chronic back pain. Dr. Jeffery thought that plaintiff's chronic back pain was directly associated with her injury of June 21, 1993.
13. Dr. Jeffery is a nationally recognized expert in the area of evaluation and treatment of multiple sclerosis. Dr. Jeffery was of the opinion that plaintiff's injury of June 21, 1993 did not directly aggravate, exacerbate or worsen plaintiff's multiple sclerosis. However, he felt that the stress caused by her pain and the stress associated with her injury more than likely did aggravate and exacerbate plaintiff's multiple sclerosis. Dr. Jeffery could not credibly or convincingly tell to what, if any, degree the stress may have aggravated or exacerbated her multiple sclerosis.
14. Dr. Jeffery indicated that, although there is not any scientific data of how stress affects multiple sclerosis, it is common knowledge within the community of doctors who treat multiple sclerosis on a daily basis that stress does, in fact, have a direct impact on the course of multiple sclerosis patients and their care.
15. Dr. Jeffery indicated that he could not determine when plaintiff's disability due to her multiple sclerosis started, as she was working up until her injury of June 21, 1993. He noted that plaintiff had had multiple sclerosis for approximately twenty (20) years prior to her injury.
16. All of plaintiff's treating physicians agree that plaintiff is presently permanently and totally disabled. They are unable, however, to determine whether her injury of June 21, 1993 or whether her multiple sclerosis is the cause of her disability. This opinion, or lack thereof, is accepted as credible and convincing.
17. Dr. Yount indicated that plaintiff's June 21, 1993, injury was one which normally would heal in a 6 to 8 week period with conservative treatment. The undersigned accept this opinion as credible and convincing.
18. Plaintiff's average weekly wage at the time of her injury was $290.45, yielding a compensation rate of $193.64.
19. Plaintiff's disability began on June 22, 1993 and continued until July 9, 1993, for the two weeks and two days, thereafter, that Dr. Yount took her out of work. Plaintiff voluntarily removed herself from the workplace following that period of time, for which she was paid full wage replacement, and despite the availability of suitable work for her with defendant-employer.
***********
Based upon the foregoing stipulations and findings of fact, the undersigned make the following
 CONCLUSIONS OF LAW
1. On June 21, 1993, plaintiff sustained an admitted injury by accident arising out of and in the course of her employment with defendant-employer.
2. Plaintiff's average weekly wage was $290.45 per week, yielding a compensation rate of $193.64.
3. As a result of the injury by accident of June 21, 1993, plaintiff is entitled to temporary total disability compensation in the amount of $193.64 per week for the period of time from June 22, 1993 through July 9, 1993, for which she has already been paid full wage replacement.
4. Plaintiff is entitled to the payment of the medical expenses incurred for the treatment of the injuries she sustained on June 21, 1993, and for any further treatment that tends to cure, give relief and/or lessen plaintiff's period of disability.
***********
Considering the foregoing findings of fact and conclusions of law, the undersigned make the following
 AWARD
1. Defendant shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury and resulting chronic back pain when bills for same have been submitted to and approved by the Industrial Commission, for so long as such evaluations, treatments and examinations may reasonably by required to effect a cure, give relief and/or lessen plaintiff's period of disability.
2. Plaintiff is entitled to no additional indemnity compensation at this time.
3. Defendants shall pay the costs of this action.
IT IS FURTHERMORE ORDERED that this case be REMOVED from the Full Commission hearing docket.
This the ___ day of ____________, 1999.
 S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
(Participated in the panel but unavailable for signature due to current illness)
______________________________ CHRISTOPHER SCOTT COMMISSIONER
JHB:kws